NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRENDA BRAY, | : |
| Plaintiff, | : Civil Action No. 10-4428 (JAP) |
| v. | : |
| | : **OPINION** |
| SCHLUMBERGER TECHNOLOGY CORPORATION, et al., | : |
| Defendants. | : |

PISANO, District Judge.

Presently before the Court is Defendants Schlumberger Technology Corporation, Nicolas Pacault, Emily Hines, Odd Oeen, and Stephen Diana's (collectively, "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Brenda Bray opposes the motion. For the reasons set forth below, Defendants' motion for summary judgment will be granted.

**I.      BACKGROUND**

Plaintiff, an African-American female, has been employed with Schlumberger Technology Corporation ("Schlumberger"), an oilfield services provider, since 1981. Schlumberger is organized into several divisions, including wire line, well services, and engineering, manufacturing, and sustaining ("EMS"). Within EMS, there are approximately forty-seven technology centers, including the Princeton Technology Center ("PTC") in Princeton, New Jersey, and the Sugar Land Production Center ("SLPC") in Sugar Land, Texas.

Schlumberger compensates its employees on either an hourly basis or a salaried basis in accordance with a pay grade system. Diana Decl. ¶ 9. When Plaintiff became employed at Schlumberger in March 1981, she began working as an hourly employee in Rosharon, Texas. Bray Dep. 22:13-25. After a promotion to the position of production operator specialist, she received a six percent wage increase in 1984. Diana Decl. ¶ 13. That same year, two other production operator specialists, George Cassatt and Michael Dillon, received eight percent wage increases. *Id.* ¶¶ 13, 27. According to Stephen Diana, personnel manager for Schlumberger's North America operations, both Cassatt and Dillon had more years of operator experience at the time the wage increase decisions were made. *Id.* ¶ 32.

In February 1995, Plaintiff obtained her first supervisory position and entered the salaried ranks of Schlumberger at grade level 9. Bray Dep. 33:15-18; Diana Decl. ¶ 14. Four years later, in January 1999, she was promoted to the position of quality systems manager for GeoQuest, a division of Schlumberger, at grade level 10. Bray Dep. 62:18-25; Diana Decl. ¶ 15. Plaintiff then received another promotion in February 2000, this time to grade level 11, and was transferred to Houston to take a position as quality, health, safety, security, and environment ("QHSE") manager. Bray Dep. 67:23-25; Diana Decl. ¶ 16. After two years in Houston, Plaintiff transferred to Rock Springs, Wyoming to serve as the health, safety, security, and environment ("HSE") manager before transferring again in August 2005 to New Orleans to assume the position of HSE training and compliance manager at grade level 13. Bray Dep. 122:11-125:25, 182:11-183:25; Diana Decl. ¶ 17.

In March 2007, Plaintiff transferred to PTC in Princeton, New Jersey, where she began working as the QHSE and facilities manager. Bray Dep. 220:9-222-14; Diana Decl. ¶ 17. She received a promotion to grade level 14 as a result of the transfer, and reported to the general

2

manager at PTC and the HSE manager at SLPC, Nicolas Pacault and Neil Campbell, respectively.  Bray Dep. 226:11-227:11.

In 2008, Campbell visited PTC twice to review HSE compliance issues.  Bray Dep. 251:3-255:23; Pacault Decl. ¶ 13.  During those visits, he identified areas under Plaintiff's control and responsibility that he thought needed to be addressed, and he provided Plaintiff with a list of action items.  Bray Dep. 251:3-255:23; Pacault Decl. ¶ 13.  Additionally, in May 2008, an environmental assessment was done at PTC and the center was again found noncompliant with HSE standards.  Pecault Decl. ¶ 15.

On January 16, 2009, Odd Oeen, HSE systems and practices manager for Schlumberger, informed Plaintiff and Pacault that he would be conducting a site visit at PTC in early February.  Oeen Decl. ¶ 4.  Oeen was responsible for ensuring that all of Schlumberger's EMS centers, including PTC, were complying with HSE standards.  Oeen Decl. ¶ 3.  Oeen Dep. 34:3-11.  During his visits to PTC in early February, Oeen identified numerous non-compliance issues and HSE deficiencies, ultimately concluding that twenty action items needed immediate remedial action.  Oeen Decl. ¶¶ 7-8; Oeen Dep. 52:4-14; 46:15-20; Pacault Decl. ¶ 21.  Specifically, he stated that, *inter alia*, hazardous chemical containers were being stored in unsecure areas, technology assets throughout the facility were not secured, the signage for personal protective equipment was deficient, and Plaintiff failed to conduct a security assessment of the site despite ongoing construction at PTC that resulted in barriers being removed.  Oeen Decl. ¶ 7; Ex. J-1.  As a result of these findings, PTC failed Oeen's audit.  Oeen Decl. ¶ 8.

Based upon his visits to PTC, Oeen concluded that Plaintiff did not have the leadership abilities necessary to manage the HSE function or bring PTC into compliance.  Oeen Decl. ¶ 10.  Thus, he recommended that she be removed from her position, and communicated that opinion to

Pacault and Campbell.  Oeen Decl. ¶¶ 11-12.  Pacualt agreed with Oeen, and determined that Plaintiff's performance was deficient and that she was not capable of adequately performing in her current position.  Pacault Decl. ¶ 24.  Specifically, he identified her inability to manage her employees and to provide the right support and expertise necessary to address the HSE issues reflected in Oeen's audit.  Pacault Decl. ¶ 27.  As a result, Pacault ultimately decided to remove Plaintiff from the QHSE position.  Pacault Decl. ¶ 25.

On April 16, 2009, Plaintiff was reassigned to the customer quality manager position at PTC.  Bray Dep. 281:16-24; Diana Decl. ¶ 18.  Plaintiff described her new position as a demotion, stating that her job functions changed in a variety of ways and that she was being replaced by someone with no prior experience in QHSE.  Bray Dep. 282:-14.  She further stated that she believed that Pacault sought her removal from the position of QHSE manager because she is African-American, and that Pacault was joined in the effort by Odd, Diana and Hines.  Bray Dep. 285:10-286:13.  As the basis for her belief that the decision was motivated by discriminatory animus, Plaintiff stated that, leading up to her perceived demotion, she was not included in various meetings and decisions that she thought she should have been, was accused of misconduct she was not responsible for, was denied access to her personnel file, and that Pacault filled various positions with French employees after arriving at PTC.  Bray Dep. 286:16-287:25; 306:6-307:21.  In March 2009, Plaintiff complained about her new position to Schlumberger's ethics office but did not include any allegations of race-based discrimination.  Diana Decl. ¶ 39.  Furthermore, Plaintiff admits that her grade level, salary, and benefits did not change when she became customer quality manager at PTC.  Bray Dep. 281:16-282:4; Diana Decl. ¶ 18.

After Etienne Beney, HSE manager at SLPC and the first individual identified as a possible replacement as QHSE manager at PTC, declined the position, Chris Spiers, a former center manager, was recommended by Campbell and Oeen.  Oeen Decl. ¶¶ 14-16; Pacault Decl. ¶¶ 31-33.  Campbell and Oeen believed that Spiers had the necessary managerial experience to lead PTC and bring it back into compliance with HSE standards.  Oeen Decl. ¶ 16.  Pacault ultimately agreed, and Spiers accepted the position of QHSE manager at PTC in February 2009.  Pacault Decl. ¶ 33.

On December 21, 2009, Plaintiff filed a charge with the New Jersey Division on Civil Rights.  Hines Decl., Ex. 12.  In the charge, she asserts that she has "been subjected to various acts of discrimination in the form of disparate terms and conditions of employment as well as demotion," which she believes occurred because of her race and sex in contravention of Title VII.  *Id.*  She further states that she has been retaliated against during her employment at Schlumberger.  *Id.*

After receiving a right-to-sue letter from the EEOC, Plaintiff filed a Twenty-Six Count Complaint with this Court on August 26, 2010.  Therein, she asserts a variety of claims against Schlumberger, alleging: intentional discrimination in violation of Title VII, 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination ("NJLAD"); disparate impact in violation of the NJLAD; hostile work environment in violation of Title VII, § 1981, and the NJLAD; retaliation in violation of § 1981, Title VII, and the NJLAD; and violation of the New Jersey Conscientious Employee Protection Act ("NJCEPA").  Plaintiff also asserts individual claims against Oeen, Diana, Pacault, and Hines for intentional discrimination in violation of § 1981, aiding and abetting employment discrimination in violation of the NJLAD, and retaliation in violation of §

5

1981 and the NJLAD.  On November 9, 2011, Defendants filed the instant motion for summary judgment.

## II.      STANDARD OF REVIEW

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law identifies which facts are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986*)*.  In determining whether a genuine dispute of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan,* 122 F.3d 171, 176-77 (3d Cir. 1997).  The Court is not to "weigh the evidence and determine the truth of the matter," but instead need only determine whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.

The moving party bears the initial burden of demonstrating the absence of a genuine issue, regardless of which party ultimately would have the burden of persuasion at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once that showing has been made, the burden then shifts to the non-moving party to identify, by affidavits or otherwise, specific facts showing the existence of a genuine issue for trial.  *Id.* at 324.  The non-moving party may not rest upon the mere allegations or denials of its pleadings, *id.*, and must offer admissible evidence establishing a genuine issue of material fact, not just "some metaphysical doubt as to the material facts."  *Matushita*, 475 U.S. at 586.

**III.   DISCUSSION**

    A.   <u>Intentional Race Discrimination</u>

Plaintiff first alleges that Defendants discriminated against her on the basis of her race in violation of Title VII, 42 U.S.C. § 1981, and the NJLAD. She bases her claims on her involuntary reassignment in 2009 from QHSE and facilities manager to customer quality manager at PTC. When addressing employment discrimination claims under Title VII, § 1981, and the NJLAD, the Court applies the familiar burden-shifting framework articulated in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)(applying framework to Title VII claims); *Vulcan Pioneers of N.J. v. City of Newark*, 374 F. App'x 313, 318 (3d Cir. 2010)(Section 1981 and NJLAD claims). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating that: (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she was subject to adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *Sarullo*, 352 F.3d at 797.

Once a *prima facie* case is established, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer meets this burden, the plaintiff then has the opportunity to show that the employer's proffered reason was merely a pretext for discrimination. *Id.*

Here, Plaintiff has not made out a *prima facie* case of discrimination. As an initial matter, Plaintiff's argument that her reassignment in 2009 from QHSE and facilities manager to customer quality manager at PTC constitutes "adverse employment action" is insufficient to

7

withstand summary judgment.  Although employment decisions such as transfers or demotions may, in some circumstances, suffice to satisfy the third element of a *prima facie* case of discrimination, *see, e.g. Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411-12 (3d Cir. 1999), a plaintiff must still make a showing that she incurred a "serious and tangible" alteration of her compensation, terms, conditions, or privileges of employment.  *See Swain v. City of Vineland*, 457 F. App'x 107, 110-11 (3d Cir. 2012).  In this case, Plaintiff has fallen short of making that showing, and instead relies primarily on her own, unsubstantiated opinion that the position of customer quality manager is subjectively less desirable and significant than QHSE and facilities manager.[1]  *See id.* (subjective preference for different position not enough to establish adverse employment action, even if responsibilities of that position are "significantly different").  Even more fundamentally, she acknowledges that her pay, grade, and benefits remained the same when she was reassigned to her new position.  *See* Pl.'s Opp. at 15; Bray Dep. 281:16-282.

     Plaintiff has also failed to provide evidence to support a finding that Defendants' acted "under circumstances that raise an inference of discriminatory action." *Sarullo*, 352 F.3d at 797.  In an attempt to meet her burden at step four, Plaintiff asserts only that, because Pacault transferred other managers who were members of a protected class and replaced them with non-protected class members, Plaintiff's reassignment from the position of QHSE and facilities manager occurred under circumstances suggestive of discriminatory animus.[2]  Without more, however, the transfer of these other individuals from their positions is insufficient to give rise to

---

[1] Specifically, Plaintiff asserts that her responsibilities were diminished because she now participates in different types of meetings that she appears to consider less meaningful, she does primarily clerical work "with no exposure to business development" in her new position, she no longer has individuals reporting to her, and she is embarrassed and stigmatized by the perceived demotion.  Pl.'s Opp. at 17-18.  Notably, however, she does not cite to record evidence in making these claims.

[2] Plaintiff expressly "offers no analysis for similarly situated employees of the non-protected class who were treated more favorably."  Pl.'s Opp. at 18.

an inference that Plaintiff herself was discriminated against when reassigned to customer quality manager. *See, e.g., Blue v. Def. Logistics Agency*, 181 F. App'x 272, 274 (3d Cir. 2006)("In order to be useful in establishing a prima facie case, statistics must assist the plaintiff in proving discrimination in [his or her] particular case"); *Hawthorne v. Mercer County Children and Youth Servs.*, 2007 WL 2254565, at *5-6 (W.D. Pa. Aug 6, 2007)(holding that evidence that employer did not hire other male employees during plaintiff's employment was insufficient to establish prima case of discrimination and that "there is nothing about the Plaintiff's claim that suggests *the Plaintiff* was treated less favorably based on his sex"). Therefore, because Plaintiff fails to otherwise set forth evidence suggesting that discriminatory animus played any role in Defendants' decision,[3] she has not met her burden at step four of her *prima facie* case. *See Rene v. Lidestri Foods, Inc.*, 2010 WL 4807050, at *6 (D.N.J. Nov. 17, 2010)("a prima facie case must support the inference that Plaintiff was discriminated against because of his race, color, or national origin – it is not prima facie discrimination to simply be a member of a protected class who is subjected to a negative employment decision").

Moreover, even assuming that Plaintiff can establish a *prima facie* case of discrimination, she has made no showing that Defendants' decisions were justified by anything other than legitimate business considerations. With regard to the removal of Plaintiff from her position as QHSE and facilities manager, Defendants met their burden of articulating a "legitimate, nondiscriminatory reason" for their decision. *Sarullo*, 352 F.3d at 797. Specifically, Oeen

---

[3] At her deposition, Plaintiff stated that she believes that Defendants were acting with discriminatory animus because, leading up to her perceived demotion, she was not included in various meetings and decisions that she thought she should have been, was accused of misconduct she was not responsible for, was denied access to her personnel file, and that Pacault filled various positions with French employees after arriving at PTC. Bray Dep. 286:16-287:25; 306:6-307:21. However, all of this conduct is race-neutral and therefore not probative of discrimination or sufficient to give rise to an inference of discrimination, and Plaintiff has not offered evidence indicating that race played any role in Defendants' alleged conduct. *See Sarmiento v. Montclair State Univ.*, 513 F. Supp. 2d 72, 95 (D.N.J. 2005)(citing *Williams v. Rohm and Haas Co.*, 90 F. App'x 627, 629 (3d Cir. 2004)). Furthermore, in March 2009, Plaintiff complained about her new position to Schlumberger's ethics office, but she did not include any allegations of race-based discrimination in that complaint. Diana Decl. ¶ 39.

concluded that, in light of the findings he made during his audit of PTC—namely, that there were numerous non-compliance issues and HSE deficiencies that warranted immediate remedial action and for which Plaintiff was responsible—Plaintiff did not have the leadership abilities necessary to manage the HSE function or bring PTC into compliance. Oeen Decl. ¶¶ 3-12. Pacuault agreed, and determined that Plaintiff's performance was deficient and that she was not capable of adequately performing in her current position, particularly because of her inability to manage her employees and to provide the right support and expertise to address the HSE issues reflected in Oeen's audit. Pacault Decl.¶¶ 24, 27. As a result, he reassigned Plaintiff to the position of customer quality manager.

In an attempt to demonstrate that Defendants' proffered reasons are pretextual, Plaintiff asserts that Defendants have misrepresented the findings with regard to PTC's noncompliance with HSE standards; she does not, however, support this assertion with record evidence,[4] and indeed previously admitted that she was responsible for many of the deficiencies identified in the audit. *See* Bray Dep. 280:18-25   Furthermore, her assertions as to an alleged plan among Pacault, Oeen, Diana and Hines to remove her from her position as QHSE and facilities manager are purely speculative, and her claim that Spiers was not qualified, or less qualified, to serve as her replacement in that position is unsupported and, in any event, insufficient to establish pretext. *See Robinson v. Matthews Int'l Corp.*, 368 F. App'x 301 (3d Cir. 2010)(opinion that another candidate was less qualified does not establish pretext or show that discriminatory animus played any role in the decision); *Dungee v. N.E. Foods, Inc.*, 940 F. Supp. 682, 689 (D.N.J. 1996)(it is not the "court's role to second-guess an employer's business judgment as to who is more qualified for the job."). Accordingly, because Plaintiff cannot establish a *prima facie* case of

---

[4] Plaintiff's references to the April 15, 2009 document are not relevant and, in any event, do not support a finding of pretext. *See, e.g.*, *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1425 (7th Cir. 1986)("Occurences after a plaintiff's termination are irrelevant to a pretext inquiry").

discrimination or demonstrate that Defendants' proffered reasons for its business decision are pretextual, Defendants' are entitled to summary judgment on Plaintiff's intentional discrimination claims.

      B.      <u>Wage Discrimination</u>

In her Complaint, Plaintiff also asserts wage discrimination claims pursuant to Title VII, § 1981, and the NJLAD. She alleges that she was discriminated against beginning in 1984, when she received a six percent wage increase and two white male employees who worked in the same position as Plaintiff, George Cassatt and Michael Dillon, received eight percent increases. She maintains that she immediately complained to her manager about this disparity, who "reminded her she is a woman . . . [b]lack woman, and did nothing thereafter." Pl.'s Opp. at 30.

Here, Plaintiff's wage claims are time-barred. Indeed, the relevant statutes of limitations applicable to her claims have long since expired, as Plaintiff did not assert her wage claims until 2010 despite admitting at her deposition that she knew of the pay disparity shortly after the wage increase decisions were made in 1984. *See* Bray Dep. 75:15-77:24; *Mikula v. Allegheny County of Pa.*, 583 F.3d 181, 183 (3d Cir. 2009)(300 day statutory period under Title VII); *Verdin v. Weeks Marine Inc.*, 124 F. App'x 92, 96 (3d Cir. 2005)(four years under § 1981); *Montells v. Haynes*, 133 N.J. 282, 286 (1993)(two years under the NJLAD). Moreover, her assertion in her opposition that she complained about the wage increases in 1984 contains no citation to the record and is contradicted by Plaintiff's deposition testimony that she made no allegations at that time that the increases were motivated by discrimination.[5] *Id.* Furthermore, Plaintiff did not include any allegation of wage discrimination in her EEOC charge. *See Economos v. Scotts Co.*,

---

[5] As Defendants point out, the Lilly Ledbetter Fair Pay Act does not revive Plaintiff's wage claims, as she had knowledge of the pay disparity at the time the decisions at issue were made and further because, as Plaintiff admits, the wage increase disparity has had no effect on any paycheck she received since becoming a salaried employee—a time span that encompasses the entire relevant statutory periods. *See* Bray Dep. 32:14-19. Plaintiff does not refute or address Defendants' argument with regard to the inapplicability of the Fair Pay Act.

2006 WL 3386646, at *6 n.4 (E.D. Pa. Nov. 4, 2006)(rejecting wage claim where EEOC charge made no specific allegations regarding wage discrimination). Accordingly, Defendants are entitled to summary judgment on Plaintiff's wage claims.[6]

C. Hostile Work Environment

Plaintiff also asserts hostile work environment claims pursuant to Title VII, § 1981, and the NJLAD. In order to prevail on a hostile work environment claim, a plaintiff must demonstrate that the defendant's conduct: (1) would not have occurred but for the plaintiff's protected status; and that (2) the conduct was severe or pervasive enough to make (3) "a reasonable [person of the same protected class] believe that the (4) conditions of employment are altered and the working environment is hostile or abusive." *Lehmann v. Toys 'R' Us, Inc.,* 132 N.J. 587, 604-05 (1993); *see also Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001) (explaining that a hostile work environment claim under the NJLAD closely resembles and includes the same basic elements as a Title VII hostile work environment claim); *Griffin v. Harrisburg Prop. Servs., Inc.*, 421 F. App'x 204, 207 (3d Cir. 2011)(the elements of a hostile work environment claim are the same under Title VII and § 1981).

Here, Plaintiff has not made out a *prima facie* hostile work environment claim. In support of her claims, Plaintiff points to a series of actions between September 2009 and the filing of her complaint on August 26, 2010 that she alleges amount to harassing conduct. Specifically, she asserts that her computer was tampered with, that she was subjected to harassing remarks and

---

[6] The Court notes that, even if Plaintiff's wage claims were not timed-barred, she cannot establish a *prima facie* case of wage discrimination because she has made no showing that Dillon and Cassatt were similarly situated or that discriminatory animus motivated the wage increase determinations: indeed, Plaintiff admits that she does not know Dillon or Cassatt's qualifications or experience or how the wage increase determinations were made. *Id.* at 42:2-9; 44:5-23. Additionally, although Plaintiff alleges in her Complaint a pay differential in 1999 in connection with her position at GeoQuest, she does not refute the arguments Defendants' set forth in their motion with regard to that allegation. As Defendants' arguments establish, Plaintiff's allegation as to a pay differential in 1999 is untimely, Plaintiff admitted she knew of the disparity in 1999 and did not complain at that time, and she has made no showing that she was similarly situated to Dillon. Bray Dep. 69:19-70:24; 377:5-16.

acts by Hines, and that she was excluded from various meetings. *See* Pl.'s Opp. at 29-30. However, none of the conduct she alleges in support of her claim is suggestive of discrimination, and Plaintiff does not cite to any record evidence or case law to indicate otherwise. Accordingly, because Plaintiff does not satisfy the first element of a *prima facie* case—that Defendants' conduct would not have occurred but-for Plaintiff's protected status—Defendants are entitled to summary judgment on her hostile work environment claims.[7] *Lehman*, 132 N.J. at 604-05; *see Brooks v. CBS Radio*, 342 F. App'x 771, 776 (3d Cir. 2009)(the law does not represent "'a general civility code for the American workplace' and instead provides relief only to employees who suffer severe or pervasive harassment because of a reason prohibited" by the law); *Watkins v. Nabisco Biscuit Co.*, 224 F. Supp. 2d 854, 865 (D.N.J. 2002)(dismissing claim based upon failure to produce any evidence "that the facially neutral conduct of [plaintiff's] supervisors and co-workers masked a discriminatory intent").

D.   Retaliation

Plaintiff next asserts claims of retaliation under the NJLAD, § 1981, Title VII, and the NJCEPA. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Moran v. DaVita Inc.*, 441 F. App'x 942, 946 (3d Cir. 2011) (citing *Lawrence v. Nat'l Westminster Bank,* 98 F.3d 61, 71 (3d Cir. 1996)); *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 431 (1994).

---

[7] Furthermore, no reasonable jury could conclude that the conduct that Plaintiff sets forth, viewed in its totality, was severe or pervasive enough to make "a reasonable [person of the same protected class] believe that the conditions of employment are altered and the working environment is hostile or abusive." *Lehman*, 132 N.J. at 604-05. The Court further notes that Plaintiff stated at her deposition that the only individuals responsible for harassment during her employment were George Johnson and Clay Reavis, individuals with whom Plaintiff worked in Wyoming and New Orleans. Bray Dep. 355:21-25. In addition to being based on conduct that falls outside the statutes of limitations for her claim, Plaintiff's allegations as they relate to Reavis and Johnson's conduct also lack merit because they involve racially-neutral conduct that was not sufficiently severe or pervasive to give rise to an actionable claim. Indeed, Plaintiff appears to have conceded as much, as she did not address the arguments Defendants raised in their motion with regard to Johnson and Reavis' alleged conduct.

Once that showing has been made, the defendant must articulate a legitimate, non-retaliatory reason for its actions. *Moran*, 441 F. App'x at 946.

Here, Plaintiff has not set forth a *prima facie* case of retaliation. In her opposition brief, Plaintiff asserts for the first time that the protected activity she engaged in was her refusal to voluntarily transfer out of the QHSE and facilities manager position in 2009. She maintains that she met with Pacault on January 30, 2009 to discuss rumors that she had heard about her possible transfer, and told him at that time that she would not voluntarily comply. She also claims to have told Oeen on February 2, 2009 that she did not want to be transferred. Plaintiff asserts that Oeen's subsequent audit and her resultant demotion to customer quality manager were retaliatory acts on the part of Defendants.

As a threshold matter, Plaintiff's claims with regard to the complaints she asserts she made to Pacaualt and Oeen in early 2009 about her potential transfer were not raised in her EEOC charge, Complaint or at her deposition when questioned extensively as to any alleged retaliation,[8] and Plaintiff does not provide citations to record evidence in setting forth those claims. Moreover, she merely contends that she expressed to Pacault and Oeen that she would not voluntarily transfer out of her current position, not that she believed she was being reassigned because of her race. As a result, Plaintiff has not set forth evidence sufficient to support a finding that she engaged in protected activity. *See, e.g.*, *Perry v. Harvey*, 332 F. App'x 728, 733 (3d Cir. 2009)(for purposes of proving protected activity, a plaintiff must oppose discriminatory conduct and must make opposition to such conduct by way of complaint that is not equivocal or

---

[8] At her deposition, Plaintiff stated that Pacault and Hines were responsible for the alleged retaliation, and the majority of the acts that she alleged were retaliatory occurred after she was removed from her position as QHSE and facilities manager and have no indicia of discriminatory animus. *See* Bray Dep. 326:13- 337:6. Despite extensive questioning, Plaintiff never mentioned any confrontation with Pacault or Oeen as to her potential transfer, and in her March 2009 complaint to Schlumberger's ethics office, Plaintiff did not include any allegations of race-based discrimination. *See* Diana Decl. ¶ 39; *see, e.g., Hackerman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991)("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists.").

vague). Furthermore, as discussed above, Plaintiff cannot establish that she suffered an adverse employment action, and she likewise fails to set forth evidence that the asserted retaliatory acts were motivated by discriminatory animus or that Defendants' decision to remove Plaintiff from her position as QHSE and facilities manager was justified by anything other than legitimate, non-retaliatory reasons. Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

  E.  <u>Disparate Impact and Aiding and Abetting</u>

In her Complaint, Plaintiff also asserts claims of disparate impact and aiding and abetting employment discrimination in violation of the NJLAD. Defendants argue that Plaintiff's disparate impact claim lacks merit because she failed to exhaust her administrative remedies and failed to demonstrate a specific employment practice or offer sufficient statistical evidence to substantiate her claim. With regard to Plaintiff's aiding and abetting claims, Defendants assert that the conduct alleged by Plaintiff does not rise to the level necessary to assert such a claim, and that, at her deposition, Plaintiff failed to name as aiders and abettors several of the individuals she identified as such in her Complaint.

Here, Plaintiff has not opposed Defendants' arguments with regard to the futility of her disparate impact and aiding and abetting claims. Indeed, in setting forth the claims she was raising and responding to in her opposition, Plaintiff did not mention either of those claims, *see* Pl.'s Opp. at 5-6, and did not otherwise refute or address them throughout the remainder of her brief. Accordingly, because the Court concludes that Plaintiff has abandoned and waived her disparate impact and aiding and abetting causes of action, Defendants are entitled to summary judgment on those claims at this time.[9] *See Daughtry v. Family Dollar Stores, Inc.*, 2011 WL

---

[9] The Court notes that, for the reasons outlined above and set forth in more detail in Defendants' moving brief, Plaintiff's disparate impact and aiding and abetting claims also appear to lack support and substantive merit.

601270, at *8 (D.N.J. Aug. 5, 2011)(granting defendant summary judgment on NJLAD claim because plaintiff failed to respond to defendant's argument and thus waived claim); *Player v. Motiva Enters. LLC*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007); *Skirpan v. Pinnacle Health Hosps.*, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010)( "[w]here a plaintiff has brought a cause of action which is challenged through motion for summary judgment as legally insufficient, it is incumbent upon the plaintiff to affirmatively respond to the merits of a summary judgment motion.").

## IV.  CONCLUSION

For the reasons above, Defendants' motion for summary judgment is granted. An appropriate Order will follow.

/s/ JOEL A. PISANO  
United States District Judge

Dated: May 29, 2012